IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AMERITOX, LTD., and
MARSHFIELD CLINIC,

                Plaintiffs,                            ORDER

    v.

                                              13-cv-832-wmc

MILLENNIUM HEALTH, LLC.

                Defendant.

The court is in receipt of the parties' respective submissions on Millennium's and plaintiffs' proposed statements regarding prior litigation for the jury's consideration during the damages phase of the trial.[1] (Dkt. ##389, 390.) Millennium specifically submits two proposed statements as to the limited value of the range-based results in Ameritox's Guardian Rx product, containing purported admissions by Ameritox in (1) the false advertising case in the District of Maryland and (2) the deceptive trade practices case in the District of Florida. Millennium asserts that both statements will assist in the jury's consideration of the commercial success factor of the patented invention in determining a reasonable royalty.

After review of the support cited by Millennium in its motion, however, the court finds no such legally binding admissions in either case. Accordingly, the court declines to provide any statement to the jury that Ameritox previously disavowed the value of the patented invention in its own product.

---

[1] Plaintiffs confirm that they do not intend to introduce any evidence related to commercial success during Phase I of the trial. (Pls.' Submission (dkt. #390) 2.)

As an initial matter -- and to the extent the court understands it -- the false advertising case concerned a statement that Ameritox's product could help physicians determine their patients' compliance with prescribed dosage, among other related advertising claims. As the court previously found, in rejecting Millennium's claim construction, the patented invention is not limited to quantifying the specific dose taken by a patient. With that overarching point in mind, the evidence cited by Millennium offers insufficient support for its proposed statement.

First, Millennium points to the deposition testimony of Lori Overstreet, corporate representative of Ameritox, designated to testify in the false advertising case about market research or consumer surveys, among other topics. In that deposition, Overstreet was asked about the Ameritox's most recent physician survey. (Overstreet Depo. (dkt. #249) 140.) In response to a question about whether doctors believe there are any points of differentiation between Ameritox and its competitors, Overstreet first qualified her testimony by noting that she would have to look at the specific research, but then testified that "there were no differences between any of the competitors and Ameritox." (*Id.* at 141.) Millennium relies on this testimony in sole support of a proposed statement to the jury that: "In prior litigation between the parties, Ameritox denied that range-based results influenced customer purchasing decision." (Def.'s Submission (dkt. #389) 2.) Not only is this specific finding a stretch from Overstreet's answer to a much broader question, but Ameritox directed the court to the research results, which Overstreet testified she would need to review before giving an unqualified response -- and which states that the only point of differentiation between Ameritox and its competitors is "the

2

ability to show whether patients are taking too much or too little medication." (Pls.' Ex. 182.)

Second, Millennium cites to testimony in the false advertising case by Ameritox's damages expert, who criticized the conclusion of Millennium's expert that Ameritox's advertising of a physician's ability to tell if his or her patients are taking too much or too little medication affected 19% of Ameritox's customers. (Def.'s Submission (dkt. #389) 2 (citing Rebuttal Report of R. Bruce Den Uyl (dkt. #360-22) 12-13).) While Ameritox's expert certainly down-played the role of this factor -- as compared to other surveyed factors -- his testimony is also too attenuated to bind Ameritox to a blanket representation that its customer research was unable to determine if a customer's purchasing decision was affected by whether its product could tell if a patient took too much or took little medication. This is especially true in light of other research cited by Ameritox and summarized above that this factor *was* the sole distinguishing feature for customers.

Third, Millennium points to Ameritox's allegations in counterclaims in that lawsuit, which assert that turnaround time and confirmation methodology were factors in customer purchasing decisions. (Millennium's Submission (dkt. #389) 3 (citing Ameritox's Counterclaims (dkt. #129-8) ¶¶ 30, 40).) Notably, the counterclaims actually allege that each of these were "a" factor, which plainly does not constitute a disavowal of the value of Ameritox's range-based results.[2]

---

[2] Millennium also seeks to introduce Ameritox's counterclaims challenging Millennium's own advertising and the court's order on those claims (Def.'s Submission (dkt. #389) 3), but the court sees no basis for how Millennium's advertising would impact the jury's

Fourth, Millennium relies on deposition testimony of Todd Gardner, a corporate representative in the false advertising case, that Ameritox's differentiation, from his perception, is "our customer service, which Rx Guardian, as I stated, is part of that." (Gardner Depo. (dkt. #235) 110.) This, too, is no admission of the lack of value of the patented invention in Ameritox's commercial success. To the contrary, Gardner testified that part of its customer service is the product itself.

Finally, Millennium proposes that the court advise the jury that "Ameritox's damages expert" in the Florida deceptive trade practices action, "opined that in conducting research into the reasons for lost customers, Ameritox had identified two top reasons for customer departures that have no relation to the graphed results." (Def.'s Submission (dkt. #389) 4.) While this description appears consistent with a statement in the cited expert report, it does *not* support a statement that Ameritox's use of the patented invention in its product is not of value (or of limited value) in light of other features driving customer demand of that product.

Still, this opinion may be relevant to whether the patented invention drove sales of Millennium's product -- factor 13 of the *Georgia-Pacific* factors -- just as other, specific testimony and allegations described by the court above may be relevant if not inflated into something more that was actually stated or reduced into a fairly meaningless statement as plaintiffs propose. Accordingly, *without* describing the nature of any specific litigation, the court will permit Millennium to use *actual, unqualified* testimony of

determination of the commercial success of Ameritox's embodiment of the patented invention.

4

corporate designees or allegations of Ameritox in "other litigations" for impeachment or other legitimate purposes, including refreshing recollection or if relied upon by experts in previously disclosed reports. If disputed, the court will also *consider* admission of more narrowly and carefully crafted quotes into evidence as statement of a party opponent if consistent with this opinion.

Entered this 14th day of April, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge